IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHERRY L. SPEAKS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-12-206-SPS |

## OPINION AND ORDER

The claimant Sherry L. Speaks requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born June 13, 1951, and was fifty-nine years old at the time of the administrative hearing. (Tr. 30, 103). She completed the twelfth grade, and has worked as a secretary. (Tr. 20, 137). The claimant alleges that she has been unable to work since June 30, 2009, due to lumbar degenerative disc disease, and a herniated lumbar disc. (Tr. 130).

### Procedural History

On July 9, 2009, the claimant applied for applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 4, 2011. (Tr. 17-23). The Appeals Council then denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), she could lift/carry twenty pounds occasionally and ten frequently, stand/walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday. He imposed the additional limitations of only occasionally stooping,

crouching, crawling, kneeling, balancing, and climbing stairs, and never climbing ladders. (Tr. 21). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as a secretary. (Tr. 23).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly assess her mental impairments at step four, (ii) by improperly evaluating the treating source opinion from Dr. Easwar M. Sundaram, and (ii) by failing to properly assess her credibility. The Court finds the claimant's second contention persuasive for the following reasons.

The claimant had the severe impairments of degenerative disc disease and osteoarthritis. (Tr. 19). The relevant medical evidence reveals that the claimant underwent total L4 and partial L5 laminectomies with complete L4-5 discectomy for decompression of the neural elements followed by an L4-5 posterior lumbar interbody fusion with cages, autograft, and instrumentation. (Tr. 236). Following the surgery, the claimant continued to complain of pain in her back, and underwent a series of epidural steroid injections in April and May 2008 as a part of her treatment at the AMHAN Pain Management Center. (Tr. 290-291, 312, 314, 316). She was treated monthly from February 2008 through March 2010, continued to complain of lower back pain, and frequently reported pain at an eight or above on a scale of ten. (Tr. 295-311, 422-424). She also complained of dizziness, but CT scans were normal and doctors attributed the dizziness to her medications. (Tr. 251, 287, 332-335). A November 2008 CT myelogram was unremarkable as to explaining her continued pain. (Tr. 264, 281). Notes from Dr. Deepak Jaiswal, one of the claimant's treating physicians, reflect that he treated

her for, *inter alia*, chronic back pain, and he also noted that she had a limited range of motion secondary to pain. (Tr. 336-356, 409-414, 438-443). On August 21, 2009, a state consultative physician found that she had pain with range of motion testing of the lumbar spine with diminished range of motion of the lumbar spine, as well as positive straight leg raising reflex bilaterally in both sitting and supine positions. (Tr. 360-361). Neurologically, Romberg's and Babinski's were negative. He assessed her with failed back syndrome, lumbar disc disease, and severe lower back pain with bilateral lower extremity radiculopathy. (Tr. 361).

The claimant was treated by a number of physicians at the Texoma Neurology Associates, P.A. clinic in Sherman, Texas, including Dr. Sundaram. On April 4, 2009, Dr. Sundaram conducted a motor nerve conduction study, finding evidence of chronic L5 radiculopathy on the right side, with no evidence of acute radiculopathy. (Tr. 328). On June 22, 2009, Dr. Sundaram submitted a letter stating that it was his opinion that the claimant was disabled due to failed back syndrome with pinched nerves due to scar tissue. (Tr. 289). On October 9, 2009, Dr. Sundaram completed an RFC statement as to the claimant's ability to do work. He indicated that the claimant could sit/walk three hours in an eight-hour workday and stand up to two hours, could frequently lift/carry up to five pounds and occasionally up to twenty pounds, and had limited ability to push and pull leg controls as well as with use of hands for repetitive movement. Additionally, he stated that the claimant could never squat, crawl, or climb, and only occasionally bend, reach, handle, or finger. (Tr. 380-381). Additionally, he noted she had total restrictions with unprotected heights, being around moving machinery, exposure to marked changes

in temperatures and humidity, and exposure to dust, fumes, and gases. He indicated that the claimant would not be able to perform work within those parameters on a sustained and continuing basis, due to "pain that cannot always be relieved by changing positions except lying down for awhile," and "that when pain is bad - back and legs give out and pt falls." (Tr. 381). Additionally, Dr. Sundaram stated, "Pt has failed back syndrome. She has nerve damage in back due to entrapment in the scar tissue. She has had no relief w/ any medication. Her condition has worsened, as she has history of multiple falls due to her medical condition." (Tr. 383). Dr. Sundaram completed a Physician's Clinical Assessment on August 16, 2010. He indicated, as relevant, the same lift/carry restrictions; that the claimant could use her hands "less than occasionally"; that she could bend occasionally, but climb, stoop, kneel, crouch, and crawl "less than occasionally"; stand/walk/sit less than two hours in an regular work day; and that she required complete freedom to rest frequently without restriction in order to relieve her severe pain. (Tr. 416-147).

The claimant testified at the administrative hearing that she had degenerative disc disease as well as rheumatoid arthritis, and that she stopped working in June 2009 because the pain was too much despite her 2007 surgery. (Tr. 31, 34). Her attorney pointed out that she missed 400 hours of work in 2008 and 200 hours by June 2009. (Tr. 25). She testified that her daily pain averaged between seven and nine on a scale of ten, and that her medications caused her dizziness. (Tr. 36-37). She stated that she spends much of the day lying down because it helps to ease the pain some. (Tr. 37-38). She testified that she could lift up to fifteen pounds right after her 2007 surgery, but that her

ability to lift had declined over time. (Tr. 39-40). She explained that she has help carrying her supplies from the grocery store, that she struggles to do household chores, and that she does not cook as much as she used to. (Tr. 41). She testified that she takes care of her own personal hygiene, but that she sits on a chair in her shower. (Tr. 42).

The ALJ summarized the claimant's testimony and the medical evidence. The ALJ discussed the claimant's activities of daily living and found that watching television while lying down, using a computer, completing crafts, and taking care of her cat were indicative of less than disabling impairments. (Tr. 21). The ALJ discussed her medical history and the resulting CT scans and the nerve conduction test, but made no mention of her diagnosis of chronic L5 radiculopathy, or consistent complaints of pain, dizziness, and falls. He rejected Dr. Sundaram's opinion as being based too heavily on the claimant's subjective complaints rather than on "thorough and precise objective findings," and found it was not fully consistent with the medical evidence of record of the claimant's descriptions of her activities. (Tr. 22). He then gave great weight to the opinions of the non-examining state reviewing physicians who found the claimant could perform a limited range of light work. (Tr. 21-22).

The medical opinion of a treating physician is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted]. When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering

the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinions entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the ALJ gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Although the ALJ was not required to give controlling weight to any opinions that the claimant was disabled or unable to perform even sedentary work, the ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. Dr. Sundaram expressed such an opinion in his RFC Assessments; however, the ALJ rejected the assessments because he believed that Dr. Sundaram's opinion was based on the claimant's subjective complaints, which he had rejected as not credible, and because he believed the medical evidence was inconsistent with Dr. Sundaram's conclusions. Although the ALJ noted the proper analysis requirements at the outset of step four, he failed to properly apply them when he ignored the evidence in the record as to the claimant's continued treatment for back pain, dizziness, and falls. The ALJ's conclusion that the opinions expressed by Dr. Sundaram

were inconsistent with other medical evidence in the case would have been a legitimate reason for refusing to give them controlling weight if the ALJ had specified the inconsistencies to which he was referring. *See, e.g., Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.") [citation omitted]. But even if Dr. Sundaram's opinion *was not* entitled to controlling weight, the ALJ was required to determine the proper weight to give it by applying the factors in 20 C.F.R. § 404.1527. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527."), *quoting Watkins,* 350 F.3d at 1300. *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("[An ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.") *quoting* Soc. Sec. Reg. 96-5p, 1996 WL 374183, at *3 (July 2, 1996).

Furthermore, although the ALJ was not required to give controlling weight to the opinion of Dr. Sundaram that the claimant was disabled, *see, e. g.,* 20 C.F.R. §

404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), the ALJ nevertheless *was* required to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. § 404.1527. Instead, the ALJ assigned that statement "little weight" because it was not fully consistent with the medical evidence of record. *See Langley,* 373 F.3d at 1119. *See also Miller,* 43 Fed. Appx. at 204; Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). The ALJ thus improperly performed the necessary assessment by ignoring pertinent records to afford little weight to the treating physician's opinion that the claimant was disabled.

Last, the claimant's friend, Linda Dunham, completed a Third Party Function Report. She stated that she sees the claimant every weekend, and that the claimant is no longer able to clean her house, or go to the casino, dancing, or festivals anymore. (Tr. 148). She stated that the claimant goes to the grocery store every two weeks, but that she is not able to get out and walk very much (only up to half a block). (Tr. 147-154). Social Security Ruling 06-03p (SSR 06-03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not seen the claimant in their professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939. SSR 06-03p states, in part, that other source opinion evidence, such as those

from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: i) nature and extent of the relationship; ii) whether the evidence is consistent with other evidence; and iii) any other factors that tend to support or refute the evidence.  Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *5-6.  The ALJ mentioned the Third Party Function Report, but gave it "no weight" because she was not an acceptable medical source (Tr. 21), wholly failing to properly evaluate it in accordance with the factors set out in SSR 06-03p.  The ALJ's task in evaluating credibility of lay witness testimony is precisely to determine whether the witness's opinion is sincere or insincere, and then determine what weight, if any, to ascribe to the opinion or testimony.  *See Spicer v. Astrue*, 2010 WL 4176313, *2 (M.D. Ala. Oct. 18, 2010) (finding that an ALJ's rejection of a lay witness statement because it was not a substitute for an appropriate medical opinion must *not* be based on a rationale that "applies with equal force to every 'lay statement.'").  Notably, while it may be appropriate for the ALJ to reject lay witness testimony that is based on the subjective complaints of a claimant when the ALJ has already determined that the claimant is not credible, *see, e.g., Valentine v. Commissioner Social Security Administration*, 574 F.3d 685, 694 (9th Cir. 2009) ("Mrs. Valentine's testimony of her husband's fatigue was similar to Valentine's own subjective complaints.  Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [Valentine's] allegations.'  In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, it follows that the ALJ also gave germane reasons for rejecting her

-11-

testimony."), he is not entitled to reject *all* lay witness testimony with a blanket statement.

Because the ALJ failed to properly analyze the weight due to Dr. Sundaram's opinion as well as an "other source" opinion, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such results in any adjustment to the claimant's mental RFC, the ALJ should re-determine what work, if any, she can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of September, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma